**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Pablo Rodriguez Juvera; Kenia V. Nunez; Ricardo Aguiar Romero; Yesenia Vazquez DeLabra; and a class of others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>Victor M. and Carmen Salcido, husband and wife; and Factor Sales, Inc., an Arizona corporation,<br><br>      Defendants. | No. CV-11-2119-PHX-LOA<br><br>**ORDER** |

This Fair Labor Standards Act collective and class action arises after the parties reached a settlement and this Magistrate Judge conducted a fairness hearing on October 29, 2013. On November 13, 2012, the Honorable James A. Teilborg, Senior United States District Judge, referred this action to the undersigned to oversee the procedural and logistical aspects of settling this case. (Docs. 35, 52 at 11-12)  On October 31, 2013, and with the approval of Judge Teilborg, the parties consented to proceed before this Magistrate Judge for all further proceedings, pursuant to 28 U.S.C. § 636(c).[1]

---

[1] A United States magistrate judge has jurisdiction to preside over class actions if the named parties expressly consent, even though the unnamed members of the class have not consented. *See Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998), *cert. denied*, *Harper v. General Electric Capital Auto Lease, Inc.*, 527 U.S. 1035 (1999); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) ("We agree with the Seventh Circuit that unnamed class members are not 'parties' within the meaning of § 636(c)(1), and that their consent is not required for a magistrate judge to exercise jurisdiction over a case."); *Day v. Persels & Associates, LLC*, 729 F.3d 1309, 1316-17 (11th Cir. 2013).

**I. Background**

This lawsuit alleges violations of federal and Arizona minimum-wage labor laws filed by cashiers against their employer, an Arizona grocery store chain. On October 27, 2011, four Plaintiffs, either current or former cashiers employed by Defendants, filed this collective[2] and class action lawsuit, alleging willful violations of the Plaintiffs' and class members' statutory right to receive the requisite federal and state minimum wages for nonexempt employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.; the Arizona Wage Act ("AWA"), Arizona Revised Statutes ("A.R.S.") § 23-350, *et seq*.; and the Arizona Minimum Wage Act ("AMWA"), A.R.S. § 23-363, *et seq*. (Doc. 1) Defendant Factor Sales, Inc. is an Arizona corporation with its main office located in San Luis, Arizona. (*Id*., ¶ 14 at 4; doc. 10, ¶ 14 at 3)  Defendants Victor and Carmen Salcido, husband and wife, served as Factor Sales' corporate President and Secretary, respectively, at all material times herein. According to the Complaint, the Salcidos exercised complete control over, and responsibility for, the operation of Factor Sales, and are, or were, Plaintiffs' "employer" as defined in the FLSA, 29 U.S.C. § 203(d); the AWA, A.R.S. § 23-350(3); and the AMWA, A.R.S. § 23-362(B). (Doc. 1, ¶¶ 12-13, 16 at 4)

Defendants (collectively "Factor Sales") own and operate retail grocery stores, called King Market, Factor Warehouse, and Del Sol, in southwestern Arizona in and around San Luis, Yuma County, Arizona. (Doc. 52 at 1)  At all relevant times, Factor Sales' cashiers were responsible for ensuring that each item purchased was charged correctly to, and paid for by, the stores' customers; checking customers out; bagging the customers' groceries; and guaranteeing that each cash register's drawer balanced at the end of their shift. (Doc. 1, ¶ 23

---

[2] The FLSA provides that an aggrieved employee may bring a collective action on behalf of "himself or themselves and other employees similarly situated" based on the employer's failure to adequately pay minimum wages. 29 U.S.C. § 216(b). The FLSA, however, limits participation in a collective action to only those parties that "opt-in" to the suit. *Id*. ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . .").

1    at 6)  The named Plaintiffs and class members are, or were, employed by Factor Sales as

2    cashiers, performing the same basic duties and subject to the same two policies at issue in

3    this lawsuit. (*Id*. at 4, 6)  The two disputed policies are: 1) if a cashier's cash-handling drawer

4    was short of the correct amount of money at the end of the cashier's shift, Factor Sales

5    required the cashier to repay the missing funds to Factor Sales (the "shorts" policy); and 2)

6    Factor Sales initially paid for a cashier's work uniform, name and security tag, but required

7    a cashier to repay Factor Sales for the replacement cost if a cashier's uniform, name or

8    security tag was lost or a new one was needed (the "uniform" policy). (Doc. 72 at 2)

9        At least one named Plaintiff worked in each of Factor Sales' stores between 2008 and

10   2012. In April 2013, it was believed there were approximately 200 current and former

11   cashiers who are potential members of the proposed class. (Doc. 52 at 6)  By the time of the

12   October 2013 fairness hearing, there were 425 class members. Factor Sales' cashiers were,

13   and are, paid at, or slightly above, the applicable minimum wage rates. Plaintiffs claim that,

14   when the cash drawer or till did not add up correctly, Factor Sales' company policy required

15   the cashiers to reimburse Factor Sales for the shortage, but Factor Sales did not credit the

16   cashiers if there were any cash overages. (*Id.* at 1-2)  Plaintiffs further allege that Factor

17   Sales had a policy of requiring its employees to pay Factor Sales for the cost of replacement

18   uniforms, employee name and security tags. Plaintiffs allege these policies had the effect of

19   reducing Plaintiffs' and class members' wages below the minimum wage required by federal

20   and Arizona law.

21       In the October 27, 2011 Complaint, Plaintiffs allege Defendants violated 29 U.S.C.

22   § 206(a) of the FLSA and the AMWA, A.R.S. §§ 23-363(A), and 23-351(c). After engaging

23   in some discovery, the parties stipulated the case be referred to a magistrate judge for a

24   settlement conference, and, if a settlement were reached, the magistrate judge would oversee

25   the procedural and logistical aspects of resolving the lawsuit. (Doc. 34) Thereafter, the

26   assigned District Judge granted the parties' stipulation and the case was randomly assigned

27   to the undersigned Magistrate Judge for further proceedings consistent with the referral.

28       On January 31, 2013, this Magistrate Judge conducted a settlement conference at the

1   Phoenix courthouse with all counsel, a Spanish-speaking interpreter, several corporate

2   representatives, and numerous Plaintiffs and family members physically present. (Doc. 44)

3   Shortly thereafter, Plaintiffs filed a Notice of Settlement, indicating the parties had reached

4   a settlement, but sought approval for pursuing a FLSA conditional collective action and

5   certification for a Rule 23 class action as part of the settlement. (Doc. 45) Without objection

6   by Factor Sales, Plaintiffs requested a collective action and class certification because the

7   parties were only in the discovery phase of the litigation and no depositions had been taken,

8   citing *Lopez v. Arizona Public Service Co.*, 2010 WL 1403873 (D. Ariz. Jan. 27, 2010) and

9   *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) as authority for their

10  requests.

11  **II. Conditional Collective Action and Class Action**

12  On February 25, 2013, Plaintiffs filed an Unopposed Motion to Certify Conditionally

13  Collective Action and Class Action, requesting an order, *inter alia*, certifying this action as:

14  1) a conditional collective action, and 2) authorizing the named Plaintiffs and the putative

15  class of similarly situated individuals to proceed as a class action pursuant to Rule 23,

16  Fed.R.Civ.P., on the state law claims. (Doc. 50 at 1)  In a detailed April 4, 2013 Order, Judge

17  Teilborg concluded that Plaintiffs' pleadings and declarations support their claims that the

18  named Plaintiffs and members of the potential collective action group are, or were, all

19  employed by Factor Sales as cashiers at the Factor Sales' stores in Arizona and were subject

20  to the same policies requiring reimbursement or charge backs for cash shortages, replacement

21  uniforms, name and security tags, resulting in the reduction of the cashiers' pay below the

22  required minimum wage. (Doc. 52 at 4)  Judge Teilborg found that "the evidence that

23  Plaintiffs have proffered [was] sufficient [to] certify a collective action under the FLSA."

24  (*Id.*) (citing, among others, *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir.

25  2001), *modified on other grounds*, *Anderson v. Cagle's, Inc*., 488 F.3d 945 (11th Cir. 2007);

26  *Adams v. Inter-Con Sec. Sys., Inc*., 242 F.R.D. 530, 536 (N.D. Cal. 2007) (internal citation

27  omitted)).

28  In that same order, and after conducting a thorough Rule 23(a), Fed.R.Civ.P., analysis,

1  Judge Teilborg found that Plaintiffs met the requirements of Rule 23(a) and granted

2  Plaintiffs' motion to conditionally certify this lawsuit as a collective FLSA action and class

3  action. (Doc. 52 at 10)  Furthermore, Judge Teilborg also reviewed Plaintiffs' proposed

4  notice and found that it met the requirements of Rule 23(c)(2)(B), Fed.R.Civ.P., as it

5  provided accurate and timely notice of the pendency of this collective action, so that potential

6  claimants could make informed decisions to participate in this class action or opt-out of it.

7  (*Id*.) He further authorized Plaintiffs to mail and post their proposed notice to potential

8  members of this collective and class action and ordered Factor Sales to produce the names

9  and last known addresses of such members in order to facilitate the notification process. (*Id*.)

10  In the April 4, 2013 Order, Judge Teilborg also appointed Plaintiffs' counsel as class counsel

11  under Rule 23(g), Fed.R.Civ.P., and entered other orders to facilitate the settlement of this

12  lawsuit. (*Id*. at 10-12)

13  **III. Settlement Procedure**

14       Unlike most private settlements negotiated between parties in a civil action for

15  damages, in a FLSA case or class action, the parties must seek the district court's approval

16  of the settlement's terms to ensure that it is enforceable and fair. *See Nall v. Mal-Motels, Inc*.,

17  723 F.3d 1304 (11th Cir. 2013) (affirming holding in *Lynn's Food Stores, Inc. v. United*

18  *States*, 679 F.2d 1350 (11th Cir. 1982)); *Lopez v. Arizona Public Service Co.*, 2010 WL

19  1403873, at *1 (D. Ariz. Jan. 27, 2010) (quoting *Lynn's Food*, 679 F.2d at 1352–53); Rule

20  23(e), Fed.R.Civ.P.("The claims, issues, or defenses of a certified class may be settled, . . .

21  or compromised only with the court's approval[.]"); *Hanlon v. Chrysler Corp*., 150 F.3d

22  1011, 1026 (9th Cir. 1998) ("[Rule] 23(e) requires the district court to determine whether a

23  proposed settlement is fundamentally fair, adequate, and reasonable.").

24       **A. Class Action Settlements**

25       Unless the Class Action Fairness Act of 2005 applies,[3] "[p]rocedurally, the approval

26  _____

27       [3] The Class Action Fairness Act ("CAFA") provides "[f]ederal district courts original

28  jurisdiction in any civil action where: (1) 'the matter in controversy exceeds the sum or value
of $5,000,000, exclusive of interest and costs,' (2) the action is pled as a class action
involving more than 100 putative class members, and (3) 'any member of a class of plaintiffs

of a class action settlement takes place in two stages. In the first stage of the approval process, the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658-59 (E.D. Cal. 2008) (quoting *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (internal citations omitted). Federal Rule of Civil Procedure 23(c)(2)(B) prescribes the "best notice that is practicable under the circumstances" for any class certified under Rule 23(b)(3). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

At a subsequent fairness hearing, after notice is given to putative class members, the district court entertains any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement. *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, a district court must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial"). Following a fairness hearing, a district court makes a final determination whether the parties should be allowed to settle the class action pursuant to the terms their settlement agreement. *See Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

Here, after preliminarily approving the parties' Stipulation of Settlement pending the fairness hearing, the undersigned Magistrate Judge conducted a fairness hearing in open court on October 29, 2013 to determine whether the proposed settlement, on the terms and

---

is a citizen of a State different from any defendant.'" *Bicek v. C & S Wholesale Grocers, Inc.*, 2013 WL 4009239, at *6 (E.D. Cal. Aug. 5, 2013) (quoting 28 U.S.C. § 1332(d)). According to one district court, it is a three-step inquiry if CAFA applies. *Adoma v. University of Phoenix, Inc.*, 913 F.Supp.2d 964, (E.D.Cal. 2012). CAFA is inapplicable to the case *sub judice* because the amount in controversy does not exceed the sum or value of $5,000,000, exclusive of interest and costs.

conditions set forth in the parties' Stipulation of Settlement, was fair, reasonable, and should be approved, and whether a final judgment should be entered approving the settlement. (Docs. 65, 67)  More than seven weeks before the fairness hearing, Factor Sales caused a settlement notice in English and Spanish to be published in the Yuma Sun and Baja El Sol newspapers in Yuma County, Arizona, once per week for three consecutive weeks, which stated as follows:

> **To all current and former cashiers of Factor Sales, Inc. who were employed as such in the State of Arizona at any point from January 1, 2007 through the present date.**
>
> Factor Sales, Inc. has reached an agreement to resolve a dispute filed under the Fair Labor Standards Act and Arizona Minimum Wage Act with the cashiers of Factor Sales, Inc. whom Factor Sales, Inc. employed at any point from January 1, 2007 through the present date. If you are or were employed by Factor Sales, Inc. as a cashier during this time period, you may be entitled to receive compensation as a result of a class action settlement.
>
> Nicholas J. Enoch is counsel for the class, he can be reached at the following address:
>
> Nicholas J. Enoch,
> LUBIN & ENOCH, P.C.
> 349 N. 4th Avenue
> Phoenix, Arizona 85003-1505
>
> Nicholas J. Enoch can inform class members of amounts to which they may be entitled under the proposed settlement, and the process for being excluded from the class if the class member so desires.  If you choose to be excluded from the class action portion of the lawsuit, and excluded from the settlement, you must contact Nicholas J. Enoch at the address listed above.
>
> A hearing will be held on **Tuesday, October 29, 2013 at 2:00 p.m., United States District Courthouse, 325 W. 19th Street Yuma, Arizona** where any person involved in the settlement may appear and be heard by the Court in support of, or in opposition to, the fairness of the settlement.  You may also object to the settlement in writing so long as the objection is filed with the Clerk of the Court and served on all counsel by the close of the opt-out period.
>
> It is a violation of law for Defendants to discharge or retaliate against any class member for the class member's decision to take part in the case.

(Doc. 65, ¶ 5 at 2-3) (emphasis in original). Factor Sales complied with the notice requirement by publishing the notice of settlement in the Yuma Sun and Baja El Sol newspapers, each a daily newspaper of general circulation, on September 27, 2013, October

- 7 -

4, 2013, and October 11, 2013, in English and Spanish, per the Affidavits of Publication. (Docs. 68, 68-1, Exhibit A)  Any class member was authorized to object to the settlement so long as a written objection was filed with the Clerk of the Court and served on all counsel by the close of the opt-out period.[4] No one objected to the parties' settlement either in writing or in person at or before the October 29, 2013 fairness hearing, which was simultaneously conducted from two courtrooms, *i.e.*, one in a courtroom at the federal courthouse in Phoenix and the other by video teleconference from a courtroom at the Yuma federal courthouse. Offering two courtrooms to conduct one recorded fairness hearing provided easier and less expensive access for the Plaintiffs and class members living in the San Luis or Phoenix areas to attend the fairness hearing at either courtroom and possibly object to the settlement and benefitted the Phoenix lawyers and their clients by reducing the fees and costs associated with traveling to the fairness hearing. *See* Rule 1, Fed.R.Civ.P. ("These rules . . . should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."). To assist any class member who appeared at the Yuma courthouse, the parties retained Spanish-speaking interpreter, Gus Olavarria-Oliveras. Also at the Yuma courthouse was Factor Sales' Yuma corporate counsel, Barry L. Olsen.

At the fairness hearing, the parties' Phoenix counsel explained that the size of the class had swelled to 425 individuals and why the settlement is fair and should be approved by the Court. As previously mentioned, no class member appeared at the fairness hearing at either courtroom. Plaintiffs' counsel represented, and the docket confirms, that nine (9) individuals opted-out of this lawsuit.[5] (Docs. 58-1, Exhibit ("Exh.") A; 62-1, Exh. A at 7) Subsequent to the fairness hearing, the parties filed separate post-hearing memoranda, addressing the various factors to consider for a judicial finding that the parties' settlement

---

[4] The opt-out or bar date was one hundred and twenty (120) days after the Class Notice was first sent to the Settlement Class. The Class Notice was first sent to the Settlement Class at their last known address on May 10, 2013. (Doc. 56, ¶ 5 at 3)

[5] Initially, there were 12 individuals who opted-out of this lawsuit. Three of these individuals, however, "inadvertently" opted-out, doc. 66, and have now opted back in. (Docs. 58-1, Exh. A; 62-1, Exh. A at 7; 66-1, Exh. A at 1-3)

1    is fundamentally fair, adequate, and reasonable. (Docs. 71-72)

2    **IV. The Fair Labor Standards Act**

3         **A. Generally**

4         The FLSA was enacted "to protect all covered workers from substandard wages and

5    oppressive working hours." *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 739

6    (1981). In view of the inequalities in bargaining power between employees and employers,

7    Congress made the provisions of the FLSA mandatory. *Brooklyn Savings Bank v. O'Neil*,

8    324 U.S. 697 (1945).

9         The FLSA regulates minimum wage, overtime pay, equal pay, and child labor, and

10   prohibits employers from retaliating against employees who exercise their rights under the

11   Act. *See Dellinger v. Science Applications Intern. Corp.*, 649 F.3d 226, 227-229 (4th Cir.

12   2011). Under the FLSA, employers must pay employees the federal minimum wage for the

13   time spent "engaged in commerce or in the production of goods for commerce, or []

14   employed in an enterprise engaged in commerce or in the production of goods for

15   commerce," according to a statutory schedule of the minimum hourly wage.[6] *Jimenez v.*

16   *Servicios Agricolas Mex, Inc.*, 742 F.Supp.2d 1078, 1090 (D. Ariz. 2010) (quoting 29 U.S.C.

17   § 206(a) (requiring "[e]very employer" to pay the minimum wage to covered employees)).

18        The FLSA "[i]s designed to prevent various ways employers might undermine the

19   minimum wage provisions." *California Dairies Inc. v. RSUI Indem. Co.*, 617 F.Supp.2d

20   1023, 1045 (E.D. Cal. 2009). An employer does not comply with the minimum wage

21   requirement "[u]nless the compensation is 'free and clear,' meaning the employee has not

22   kicked back part of the compensation to the employer." *Rivera v. Peri & Sons Farms, Inc.*,

23   735 F.3d 892, 897 (9th Cir. 2013) (citing 29 C.F.R. § 531.35). "Thus, employers generally

24   may not issue paychecks at the minimum wage rate and then require employees to give some

25   of the money back." *Id*. If there are deductions by the employer which lower an employee's

26   wages below the minimum wage "[f]or items not qualifying as 'board, lodging, or other

27

28        [6] The FLSA minimum wage rates were $5.85 an hour, beginning on July 24, 2007; $6.55 an hour, beginning on July 24, 2008, and currently $7.25 an hour, effective July 24, 2009. *See* 29 U.S.C. § 206(a)(1)(A)-(C).

facilities'- such as items primarily benefitting the employer - . . . , they are unlawful." *Id*. (citing 29 C.F.R. § 531.36(b)).

Title 29 U.S.C. § 207(e)(2) excludes from the calculation of an employee's "regular rate" any expenditure by an employee that is properly reimbursable by the employer, *e.g.*, the purchase of employee uniforms.[7] *See California Dairies*, 617 F.Supp.2d at 1045.  "The FLSA only requires an employer to reimburse the employee for furnishing or maintaining clean uniforms if failure to do so would reduce their wages below the minimum wage." *Id*. (citing *Hodgson v. Newport Motel, Inc., dba Newport Beach Motel*, 1979 WL 1975 (S.D. Fla. 1979); *Marshall v. Root's Restaurant, Inc*., 667 F.2d 559 (6th Cir. 1982) (restaurant violated the FLSA by requiring waitresses to purchase uniform as a condition of employment, deducting cost of uniforms from first week's wages, and thereby reducing wages below the minimum wage rate).

For violations of the FLSA's minimum wage provisions, employers "shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, . . . and in an additional equal amount as liquidated damages. . . ."  29 U.S.C. § 216(b); *see also Alvarez v. IBP, Inc*., 339 F.3d 894, 909 (9th Cir. 2003) (citing, *inter alia*, *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942) (observing that FLSA liquidated damages are not penalties exacted by law, but, rather, compensation to the employee occasioned by the delay in receiving wages due); aff'd, 546 U.S. 21 (2005). Liquidated or "[d]ouble damages are the norm, single damages the exception." *Chao v. A-One Medical Services, Inc*., 346 F.3d 908,

---

[7] Title 29 U.S.C. § 207(e)(2) provides in pertinent part:

> As used in this section, the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include . . . other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; . . . .

29 U.S.C. § 207(e)(2).

920 (9th Cir. 2003) (citation and internal quotation marks omitted); *Nellis v. G.R. Herberger Rev. Trust*, 360 F.Supp.2d 1033, 1044 (D. Ariz. 2005). District courts have the discretion to deny an award of liquidated damages "if the employer shows that it acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that its conduct did not violate the FLSA." *Id.* (quoting portions of 29 U.S.C. § 260).

The FLSA requires that in any action to enforce § 207, the district court "*shall, in addition to* any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added).

"The FLSA provides for a two-year statute of limitations unless there is a finding of willfulness, in which case a three-year statute of limitations applies." 29 U.S.C. § 255(a). "This two-tiered statute of limitations[ ] makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988) (internal quotation marks omitted). The party claiming an exception to the normal period bears the burden of showing the violation was willful. *Nelson v. Waste Management of Alameda County, Inc*., 33 Fed.Appx. 273, 274 (9th Cir. 2002) (citing 29 U.S.C. § 255(a)). The determination of willfulness is a mixed question of law and fact. *Alvarez*, 339 F.3d at 908 (citation omitted). Mere negligence by the employer in determining its legal obligation is not sufficient. *Nelson*, 33 Fed.Appx. at 274. Rather, a violation is willful if the employer either: (1) affirmatively knew its conduct violated the FLSA; or (2) recklessly disregarded whether its conduct violated the FLSA. *Chao*, 346 F.3d at 918 (citing *McLaughlin*, 486 U.S. at 133). "For § 255's extension to obtain, an employer need not knowingly have violated the FLSA; rather the three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute, *Herman v. RSR Sec. Servs*., Ltd., 172 F.3d 132, 141 (2nd Cir. 1999), although [a court] will not presume that conduct was willful in the absence of evidence." *Alvarez*, 339 F.3d at 908 (finding evidence sufficient to support a finding that employer recklessly disregarded the possibility that it was violating the FLSA because employer was

on notice of the FLSA's requirements, but took no action to assure compliance with them.)

Any assertion of an exemption from the FLSA is considered an affirmative defense that must be pled and proved by the defendant. *See Magana v. CNMI*, 107 F.3d 1436, 1445-46 (9th Cir. 1997) (exemption from requirement to pay overtime under the FLSA is an affirmative defense that must be raised by the employer); Fed.R.Civ.P. 8(b); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) ("an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof.").

## B. FLSA Settlements

While the Ninth Circuit Court of Appeals has not specifically addressed the procedure to settle FLSA claims, numerous district courts throughout the Ninth Circuit have followed the lead in the seminal case of *Lynn's Food Stores*. *See McKeen-Chaplin v. Franklin American Mortg. Co.*, 2012 WL 6629608, at *2 n. 4 (N.D. Cal. Dec. 19, 2012) (citations omitted). In *Lynn's*, the Eleventh Circuit held that:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Lynn's*, 679 F.2d at 1352-53.

When parties seek approval of a FLSA settlement, a district court may approve the settlement if it reflects a "reasonable compromise over the issues." *Lopez v. Arizona Public Service Co.*, 2010 WL 1403873, at *1 (D. Ariz. Jan. 27, 2010) (quoting *Lynn's Food*, 679 F.2d at 1352-53). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages . . . , the court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Khanna v. Inter-Con*

1  *Sec. Systems, Inc*., 2012 WL 4465558, at *10 (E.D. Cal. Sept. 25, 2012) (citations and

2  internal quotation marks omitted).

3       Conversely, district courts have also disapproved proposed FLSA settlement

4  agreements for varying reasons. *See*, *e.g.*, *McKeen-Chaplin v. Franklin American Mortg.*

5  *Co*., 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) (rejecting the parties' joint motion to

6  approve FLSA settlement and dismissal motion without prejudice due to the absence of

7  enough information and analysis to conclude that the settlement was a fair and reasonable

8  resolution of the action, the use of an overly broad general release, and the absence of time

9  records justifying the attorney's fees requested); *Khanna*, 2012 WL 4465558, at *12

10  (denying without prejudice preliminary approval of FLSA settlement because counsel did

11  not provide "any estimate of the potential recovery should the case be resolved on summary

12  judgment or at trial, so the court does not have sufficient information to determine even

13  preliminarily whether the settlement is within the range of possible approval.").

14       "There are, however, no agreed upon factors to consider in evaluating a proposed

15  FLSA settlement." *Almodova v. City and County of Honolulu*, 2010 WL 1372298, at *4 (D.

16  Haw. March 31, 2010). "Some courts have applied the factors for approval of class action

17  settlements by analogy." *Id.* (*see Churchill* factors discussed below). In reviewing a FLSA

18  settlement, the district court's "[o]bligation is not to act as caretaker but as gatekeeper; it

19  must ensure that private FLSA settlements are appropriate given the FLSA's purposes and

20  that such settlements do not undermine the Act's purposes." *Goudie v. Cable*

21  *Communications, Inc*., 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009). "Thus, [i]n reviewing

22  the fairness of such a settlement, a court must determine whether the settlement is a fair and

23  reasonable resolution of a bona fide dispute." *Id*. (quoting *Yue Zhou v. Wang's Rest*., 2007

24  WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007)).

25  **V. Class Action Settlements**

26       Before granting final approval of a class action settlement, a district court must

27  determine whether the settlement agreement meets the settlement requirements of Federal

28  Rule of Civil Procedure 23(e). Rule 23(e) requires a district court to determine whether a

proposed class action settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liability Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Furthermore, district courts must ensure the settlement is not the product of collusion among the negotiating parties. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000). Additionally, "[i]n order for a settlement to be fair and adequate, 'a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.'" *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 667  (E.D. Cal. 2008) (quoting *Staton*, 327 F.3d at 963). The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

In evaluating a proposed class-action settlement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citation omitted). The district court "does not have the ability to delete, modify, or substitute certain provisions." *Id.* (citation omitted). "The settlement must stand or fall in its entirety." *Id.* The question is not whether the settlement "could be prettier, smarter, or snazzier," but only "whether it is fair, adequate, and free from collusion." *Id.* at 1027.

## VI. The Settlement Agreement

Omitting its recitals and definitions, the parties' Stipulation of Settlement and Parties' Joint Motion for Court Approval of Same ("Settlement Agreement") makes clear that it is subject to, and conditioned upon, the final approval of the settlement and issuance of the final

order and judgment of dismissal by the District Court of Arizona. (Doc. 56, ¶ 21 at 6)  The material terms of the Settlement Agreement are as follows:

1. Upon the final order and judgment, the parties agree that, *inter alia*, District Court will:

a. dismiss with prejudice all complaints in the action as to the released persons;

b. order that all "Settlement Class Members"[8] ("SCM") are enjoined from asserting against any released person any and all claims that the SCMs have, had, or may have in the future arising out of the facts alleged in the Complaint;

c. release each released person from the claims that any SCM has, had or may have in the future, against such released person arising out of the facts alleged in the Complaint;

d. determine that the Settlement Agreement was entered into in good faith, is reasonable, fair and adequate, and is in the best interest of the class; and

e. reserve the District Court of Arizona's continuing and exclusive jurisdiction over the parties to the Settlement Agreement, including Factor Sales and all SCMs, to administer, supervise, construe and enforce the Settlement Agreement in accordance with the settlement's terms for the mutual benefit of all the parties. (*Id., ¶* 21 at 6-7)

2. The parties agree that damages in specific amounts will be paid by, or on behalf of, Factor Sales to resolve all claims of all SCMs as described in the Settlement Agreement, but the total amount of all damages paid will not exceed $157,000, excluding the attorneys' fees and costs of Plaintiffs' class counsel and the cost of administration of the Settlement Agreement. (*Id.*, ¶ 23, at 7)

3. Class counsel and the SCMs, by and through the named Plaintiffs, have determined that the distribution of the sum of not more than $157,000, as set forth in a damages calculation spreadsheet (Exh. A), is fair and appropriate. Factor Sales have acquiesced in this settlement amount. Exhibit A itemizes 425 cashiers by individual name; the amount of wages each cashier was paid below the minimum wage, if any, from 2007 through 2011; the

---

[8] According to the Settlement Agreement, a "Settlement Class Member" means "any member of the Settlement Class, including representatives, successors and assigns." (Doc. 56, ¶ 2 at 3)

1    aggregated amount of the wages due each cashier, and the total amount of damages each

2    cashier will receive if the Settlement Agreement is approved. (*Id.*, ¶ 24 at 7)

3         4. In reaching each settlement amount in the damages calculation spreadsheet, the

4    parties calculated the total minimum wage underpayment for each individual. They then took

5    the $157,000 settlement amount, subtracted the designated amounts that were to be provided

6    to the named Plaintiffs, and divided that figure by the minimum wage underpayment for all

7    class members except for the named Plaintiffs. This quotient yields a figure of 2.484617448.

8    Each individual's minimum wage underpayment was multiplied by 2.484617448 to arrive

9    at the settlement amount for each listed individual. (*Id.*, ¶ 25 at 7-8)

10        5. Under this settlement calculation formula, each SCM will receive nearly

11   two-and-one half times (2.5) the amount he or she was allegedly underpaid in minimum

12   wage. The FLSA essentially allows liquidated (double) damages going back two or three

13   years, depending upon whether the employer's violation of the FLSA was willful, while the

14   Arizona Minimum Wage Act allows treble damages over the same period of time and the

15   damages calculation begins at an earlier date if there is a showing of a "continuous course

16   of employer conduct." A.R.S. § 23-364(H).  As previously mentioned, the FLSA requires

17   that employees earn a minimum wage "free and clear" of employer-imposed charges and

18   deductions, such as deductions for cash register shortage errors and the cost of replacement

19   uniforms. The parties disagree, however, whether the Arizona Minimum Wage Act should

20   be interpreted and applied in a manner identical to the FLSA, given the slight differences in

21   the statutory language and the absence of case law interpreting Arizona law. (*Id.*, ¶ 26 at 7-8)

22   As a result of this bona fide disagreement, the parties have reached a compromise on this

23   disputed issue of Arizona law and agree that each SCM will receive roughly

24   two-and-one-half times the employee's wage underpayments calculated back to January 1,

25   2007, which will result in a liquidated damages recovery for each named Plaintiff and SCM

26   that is greater than that allowed under the FLSA. (*Id.*, ¶ 26 at 8)

27        6. The parties further agree the following payments will be made to the named

28   Plaintiffs, in care of class counsel, within thirty (30) days of the Court's final approval of the

Settlement Agreement: Juan Pablo Rodriguez Juvera ($114.45); Kenia Nunez ($2,502.03); Ricardo Aguiar Romero ($452.56); Yesenia Vazquez DeLabra ($637.89). (*Id.*, ¶ 30 at 9)

7. The parties further agree that if the total amount of all settlement payments to the named Plaintiffs and SCMs does not exceed one hundred fifty seven thousand dollars ($157,000), the difference between the total value of all claims and one hundred fifty seven thousand dollars ($157,000) will not be paid by Factor Sales.

8. The parties further agree that, except for the named Plaintiffs, Factor Sales will be responsible for distributing all SCMs settlement checks, which will be included with the regular paycheck for each SCM who is currently employed by Factor Sales, or mailed to the last known address of each SCM not currently employed by Factor Sales. Factor Sales will also provide to class counsel copies of all settlement checks and a certificate of mailing or certificate of delivery for all settlement checks for all SCM's who have not opted-out of the Settlement Agreement. (*Id.*, ¶ 32 at 9)

9. The parties further agree that Plaintiffs are eligible for, and are statutorily entitled to receive, their reasonable attorneys' fees, court costs, and costs of litigation pursuant to 29 U.S.C. § 216(b), and A.R.S. § 23-364(G). Within sixty (60) days after entry of the order approving the parties' Settlement Agreement, Plaintiffs will file: 1) a bill of costs pursuant to LRCiv 54.1; and 2) an application for an award of attorneys' fees and related non-taxable expenses, and a memorandum in support thereof, pursuant to LRCiv 54.2. While Factor Sales have reserved the right to contest Plaintiffs' filings for attorneys' fees and court costs, they agree that, by settling this lawsuit, Plaintiffs are the successful and/or prevailing parties in this litigation. (*Id.*, ¶¶ 37-39 at 10-11)

**VII. Settlement Factors**

Federal Rule of Civil Procedure 23(e) mandates that a class action "may be settled . . . or compromised only with the [district] court's approval[]" to ensure any class action settlement is "fundamentally fair, adequate, and reasonable." Rule 23(e), Fed.R.Civ.P.; *Staton*, 327 F.3d at 959. In *Churchill Village*, the Ninth Circuit Court of Appeals directed that district courts weigh and evaluate the following non-exclusive settlement factors before

1  approving or rejecting a class action settlement.

2  **A. The Strength of Plaintiffs' Case**

3  Plaintiffs point to Factor Sales' Answer, which "admits several key allegations set

4  forth in the Complaint" that Plaintiffs have "compelling factual and legal bases for their

5  claims[.]" (Doc. 71 at 4)  For example, Plaintiffs indicate Factor Sales' documents confirm

6  its policy that when a cash till did not add up correctly, Factor Sales required its cashiers, as

7  a matter of company policy, to reimburse Factor Sales for any shortages, typically on pay

8  days, but did not give any credit to cashiers for overages. (*Id.*)  Additionally, Plaintiffs points

9  to Factor Sales' other policy, "requiring Plaintiffs and other members of the proposed class

10  to pay Defendants twelve dollars ($12.00) for a second or more uniform (work shirt) and five

11  dollars ($5.00) for a replacement name (or security) tag." (*Id.*)  According to Plaintiffs, these

12  policies "reduced the pay of Plaintiffs and other cashiers who incurred such charges to below

13  the minimum wage at times." (*Id.* at 1-2)  Plaintiffs refer to several affidavits to factually

14  support these claims.

15  Plaintiffs also inform the Court that this lawsuit is not the first time FLSA violations

16  were brought to the attention of Factor Sales. (*Id.* at 5) "Records obtained from the U.S.

17  Department of Labor (see Motion to Certify, Doc. 50, Ex. B) show that, from 2002 to 2005,

18  the Department of Labor investigated whether Factor Sales was in compliance with the

19  FLSA." (*Id.*)  Plaintiffs contend that the Department of Labor's "investigation revealed that

20  '[t]here were 413 employees who were found to have not been paid at least the statutory

21  minimum wage due to [Factor Sales] deducting employee wages for cash register shortages

22  and for uniforms. The shortages appeared on payroll registers for employees who primarily

23  worked as cashiers.'"  (*Id.*)  "The Department of Labor computed that back wages owed for

24  such violations totaled $34,659.37." (*Id.*) According to Plaintiffs, Factor Sales was instructed

25  by the Department of Labor to raise any employee's wage up to the federal minimum wage

26  when the employee was docked for uniforms or cash register shortages if such deductions

27  resulted in an employee receiving less than the minimum wage. (*Id.*)

28  As a result of the Department of Labor's prior investigation, Plaintiffs believe they

1    would be able to establish Factor Sales' FLSA violations were willful, and, therefore, the

2    settlement permits damages for the three years prior to filing of the Complaint rather than the

3    damages during the default two-year statute of limitations. (*Id.*)

4            In their Post-Fairness Hearing Memorandum, Factor Sales concedes that "[f]or

5    purposes of settlement, Factor Sales does not contest that the 'Uniform and Shorts' policy

6    ha[d] the effect of reducing the cashier's wages during the pay period where a payment was

7    made." (Doc. 72 at 3)  Factor Sales acknowledges that "[f]or the class members, from the

8    time period from 2007 through 2011, payments under the 'uniform and shorts' policy

9    resulted in a potential underpayment of minimum wage in the total amount of $62,277.25."

10   Factor Sales candidly admits that "Plaintiffs case on liability is quite strong" and "[a]fter

11   assessing the risk of liability in the case, and the likelihood of success on the merits, Factor

12   Sales agreed to resolve this class action for a payment of $157,000 to the applicable class

13   members, plus payment of reasonable attorneys' fees to be separately determined by the

14   Court." (*Id.* at 5)  A settlement at this time, which Factor Sales describes as "exceedingly

15   fair," eliminates any concern Factor Sales may have about an award of exemplary damages.

16   (*Id.*)

17           **B. The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

18           The parties agree that at the time of the January 31, 2013 settlement conference,

19   which, according to Plaintiffs, led to the parties' settlement, the parties had exchanged initial

20   and several supplemental disclosure statements, but no depositions had been taken. (Doc. 71

21   at 6)  Factor Sales believes that pursuing the case through litigation would have been an

22   expensive, lengthy process of one year to 18-months of time, which would substantially

23   delay each class member's receipt of funds without substantially increasing – and potentially

24   decreasing – the funds the class members would receive. (Doc. 72 at 5-6) Absent the

25   settlement, Plaintiffs note that substantial discovery would be taken, motions and cross

26   motions for summary judgment would be filed, adding 12-15 months to this litigation, and,

27   failing a complete grant of summary judgment for either party, Plaintiffs estimate a trial

28   would last 3-10 days. (Doc. 71 at 7-8)  Plaintiffs "conservatively" estimate that they would

1    have incurred an additional $200,000 in fees and costs in reaching a verdict in this case,

2    excluding the fees and costs associated with moving to certify a collective and class action

3    in this matter. (*Id.* at 7)

4        Plaintiffs point to the risks and difficulties of 1) proving the existence and extent of

5    such allegedly widespread and long-running practices concerning deductions or

6    reimbursements for till shortages, uniforms, and replacement name tags in a trial setting, and

7    2) the application, and competing interpretations, of state law vis-à-vis the FLSA. (*Id.* at 8)

8    Factor Sales notes that, despite the strength of Plaintiffs' case on liability, there is uncertainty

9    regarding Plaintiffs' ability to extend the limitation period to 5 years, there is uncertainty

10   regarding whether the Court is required to award exemplary damages under the Arizona

11   Minimum Wage Law, and whether the Court would award exemplary damages under the

12   FLSA. (Doc. 72 at 5)  Factor Sales represents that "[i]f the class members were awarded only

13   the minimum wage underpayment -- with no exemplary damages -- for a period of 3 years,

14   that sum would be $25,482.15." (*Id.*)  Thus, from Factor Sales' viewpoint, "[t]he $157,000

15   settlement amount is fair and reasonable." (*Id.*)

16       **C. The Risk of Maintaining Class Action Status Throughout the Trial**

17       This factor does not appear to a significant issue in this case as the parties do not fully

18   develop this factor in the post-hearing memoranda and the Court does not view this factor

19   as particularly relevant to this class action Settlement Agreement.

20       **D. The Amount Offered In Settlement**

21       The Court has already noted that, pursuant to the parties' Settlement Agreement, each

22   named Plaintiff and SCM will receive nearly two-and-one half times (2.5) the amount he or

23   she was allegedly underpaid in minimum wage. Thus, every Factor Sales cashier will receive

24   full and fair compensation going back to 2007 if the settlement is approved. Significantly,

25   each named Plaintiff's and SCM's settlement amount will not be reduced to pay their

26   attorneys' and litigation costs as the Settlement Agreement provides Factor Sales will pay

27   separately. Consequently, the award of attorney fees and costs will have no effect on the

28   settlement damages the class members receive. As Factor Sales correctly notes, "the

1  agreement to resolve this case cannot be viewed at a circumstance where lawyers are

2  colluding to amass legal fees at the expense of class members, because the legal fee award

3  will not affect the class members' recovery in any way." (Doc. 72 at 6)

4  ### E. The Extent Of Discovery Completed And The Stage Of The Proceedings

5  As previously mentioned, the case settled during the exchange of paper discovery and

6  before any depositions were taken. Because this action settled before expensive deposition

7  discovery had taken place, the attorneys' fees and costs are substantially less than had the

8  settlement occurred shortly before or during trial.

9  ### F. The Experience And Views Of Counsel

10  Plaintiffs' and Factor Sales' counsel are experienced in the litigation and FLSA

11  claims. (Doc.56, ¶ 2)  According to class counsel, Nicholas J. Enoch has represented

12  plaintiffs in, at least, 14 actions involving the FLSA and/or Arizona wage and hour laws, and

13  Jarrett J. Haskovec has been involved in many of the same and other representations

14  involving state and federal wage and hour laws. (Docs. 71 at 9; 50, Exh. D, ¶¶ 8-9)

15  Moreover, Judge Teilborg has written in this case that Plaintiffs' counsel "will fairly and

16  adequately protect the interests of the class." (Doc. 52 at 7)  Factor Sales' lead counsel,

17  Georgia A. Staton, has had numerous cases and, at least, two jury trials to verdict before this

18  Magistrate Judge and she is as good an experienced trial lawyer in Arizona as there is.

19  In his post-hearing memorandum, Plaintiffs' counsel "[e]xpresses his unqualified

20  belief and judgment that the agreed-upon settlement is fundamentally and absolutely fair,

21  adequate, and reasonable and unquestionably addresses and protects the interests of not only

22  the named Plaintiffs (and Defendants), but also those of the entire class." (Doc. 71 at 9) As

23  previously noted, Factor Sales' co-counsel, Gordon Lewis, has expressed his opinion that

24  the settlement "is fair and reasonable." (Doc. 72 at 5)

25  ### G. The Presence Of A Governmental Participant

26  Neither the United States nor one of its agencies is a party to, or participant in, this

27  litigation.

28

**H. The reaction of the class members of the proposed settlement**

In addition to what has already been stated herein, Plaintiffs' counsel writes that "the overall reaction of the class members to the proposed settlement can only be viewed as positive." (Doc. 71 at 10) According to Factor Sales, the class members have been nearly "universal in their approval of the settlement" as only 9 persons have elected to opt-out of the settlement and no one appeared at the fairness hearing to object to the appropriateness of the settlement.

**VIII. Discussion**

Upon review of the entire docket and the Settlement Agreement, the Court finds that the parties' Settlement Agreement reflects a fair and reasonable resolution of the issues in this case. The FLSA essentially allows double damages going back two or three years, depending on a defendant's willfulness, while the Arizona Minimum Wage Act allows treble damages over the same period of time and further allows for an award of damages going back further than the FLSA allows provided a plaintiff proves a "continuous course of employer conduct," which is both fairly disputed by the parties and Arizona law in this area is not entirely clear. *See* A.R.S. §23-364(H). Under this settlement, each settlement class member will receive nearly two-and-one half times what he or she was underpaid in minimum wage, which is more than FLSA allows, and each settlement amount is calculated from January 1, 2007, which is going back further than FLSA might allow. There is a genuine dispute between the parties whether the Arizona Minimum Wage Act would be construed and applied in a manner identical to the federal law, given slight differences in the statutes' language and the dearth of case law interpreting the Arizona law. This settlement is a "win-win" for all parties, and, under the Settlement Agreement, this litigation should come to a conclusion.

Based on the foregoing and pursuant to Rule 23(e), Fed.R.Civ.P., the Court finds the parties' Settlement Agreement is "fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959.

**IT IS ORDERED** that the parties' Stipulation of Settlement and Parties' Joint Motion

for Court Approval of Same, doc. 56, is **GRANTED**. The parties' Settlement Agreement is hereby **APPROVED** in its entirety. Factor Sales shall promptly distribute all settlement checks as agreed in the parties' Settlement Agreement. Except for Plaintiffs' claim for an award of their attorneys' fees, court costs, and other litigation expenses authorized by law, all claims in this action are hereby dismissed with prejudice.

**IT IS FURTHER ORDERED** that the District Court of Arizona hereby retains continuing and exclusive jurisdiction over the parties, their attorneys, and this action as may be necessary or appropriate to implement and/or enforce the Settlement Agreement and award Plaintiffs their attorneys' fees, court costs, and other litigation expenses authorized by law.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter a final stipulated Judgment in favor of Plaintiffs and against Defendants consistent with the parties' Settlement Agreement as required by the Fair Labor Standards Act.

**IT IS FURTHER ORDERED** that, unless the parties reach an agreement on Plaintiffs' award for their attorneys' fees, court costs, and other litigation expenses authorized by law, **within sixty (60) days** after entry of this Order, Plaintiffs must file a bill of costs, pursuant to LRCiv 54.1; an application for an award of attorneys' fees and related non-taxable expenses; and a memorandum in support thereof, pursuant to LRCiv 54.2.

Dated this 16th day of December, 2013.

Lawrence O. Anderson
United States Magistrate Judge